UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MUNEAR ASHTON KOUZBARI, Individually and as Assignee of Rights and Claims of ARISTON LAB ASSOCIATES, LLC<br>    *Plaintiff*,<br><br>v.<br><br>HEALTH ACQUISITION COMPANY, LLC; AND RURAL COMMUNITY HOSPITALS OF AMERICA, LLC<br>    *Defendants*. | §§§§§§§§§§§§§ | CIVIL ACTION NO. 3:18-cv-126 |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Plaintiff **MUNEAR ASHTON KOUZBARI,** Individually and as Assignee of Rights and Claims of Ariston Lab Associates, LLC ("Plaintiff"), complains of the actions of Defendants **HEALTH ACQUISITION COMPANY, LLC** and **RURAL COMMUNITY HOSPITALS OF AMERICA, LLC** ("Defendants"), and respectfully would show the following:

### NATURE OF THE CASE

1.   This action arises out of Defendants' false and misleading statements to Plaintiff in the offer and sale of securities. Defendants induced Plaintiff to pay one hundred thousand dollars ($100,000.00) for a stock purchase option by misrepresenting the extent of contractual encumbrances on the ultimate issuer.

## PARTIES

2. Plaintiff MUNEAR ASHTON KOUZBARI (**"Mr. Kouzbari"**) is an individual residing in Dallas, Texas. Mr. Kouzbari was an agent of Ariston Lab Associates, LLC, at the time he executed the Option Contract on behalf of Ariston Lab Associates and paid one hundred thousand dollars ($100,000.00) as consideration for the said Option Contract. He is also an assignee of rights and claims of Ariston Lab Associates, LLC.

3. Defendant HEALTH ACQUISITION COMPANY, LLC **("HAC")** is a West Virginia limited liability company, which may be served by and through its registered agent, Steven F. White, at 700 Chappell Road, Charleston, WV 25304.

4. Defendant RURAL COMMUNITY HOSPITALS OF AMERICA, LLC **("RCHA")** is a West Virginia limited liability company, which may be served by and through its registered agent, Steven F. White, at 700 Chappell Road, Charleston, WV 25304.

## JURISDICTION AND VENUE

**1- Subject Matter Jurisdiction**

5. This Court has subject matter jurisdiction over Plaintiff's claims under: (i) 28 U.S.C. § 1331; (ii) 28 U.S.C. §1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the Parties are citizens of different states; and (iii) 28 U.S.C. § 1367 as supplemental jurisdiction over Plaintiff's claims arising under state law.

**2- Personal Jurisdiction**

6. Pursuant to the Texas Long-Arm Statute, this Court has specific personal jurisdiction over all Defendants because Defendants have conducted business in the State of Texas by (1) engaging in negotiations and entering into a contract with Plaintiff, a Texas resident; (2) taking

money from a Texas resident; and (3) making misrepresentations to Plaintiff in Texas. *See* Tex. Civ. Prac. & Rem. Code § 17.042.

**3- Venue**

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## FACTUAL BACKGROUND

### A. The Option Contract to Purchase Securities

8.      Together, Defendants HAC and RCHA, owned a controlling interest in HMC/CAH Consolidates, Inc. (the "10-Hospitals") with a right to purchase additional shares, raising the controlling interest to eighty percent (80%). Plaintiff was interested in purchasing HAC and RCHA because of their controlling interests in the 10-Hopsitals.

9.      The 10-Hospitals entity itself operated ten (10) Critical Access Hospitals. The business prospects of these ten (10) critical access hospitals were a substantial, if not the most substantial, item of interest for Plaintiff. Because of this, Plaintiff approached Defendants with interest in acquiring Defendants, which in turn would mean a controlling interest in the 10-Hospitals.

10.     In January 2017, Plaintiff and Defendants entered into a binding option contract ("Option Contract"). Plaintiff paid Defendants one hundred thousand dollars ($100,000.00). In return, Plaintiff received the right to purchase complete ownership interest in Defendants at a price of roughly thirty-one million dollars ($31,000,000.00). These terms are contained within the Letter of Intent attached hereto as Exhibit A.

### B. The Due Diligence Period & the Misrepresentations

11.     Prior to entering into the Option Contract, Defendants represented that the 10-Hospitals were subject to two (2) exclusive vendor arrangements for lab services (identified as Drumwright

and Washington County hospitals).  Plaintiff was interested in acquiring the lab business for the 10-Hospitals because Ariston Lab also provided similar services.  In order for Plaintiff to do so, however, Plaintiff would have to "buy out" the existing exclusive vendor agreements.  In other words, fewer exclusive vendor agreements meant fewer barriers and costs to acquiring the lab business for the 10-Hospitals.  Plaintiff was willing to purchase HAC and RCHA with two exclusive vendor agreements in place but Plaintiff later learned that Defendants misrepresented the number of existing exclusive vendor agreements.

12.     Under the Option Contract, Defendants had a duty to provide Plaintiff with information on HAC and RCHA.[1]  Plaintiff in turn had the right to purchase the HAC and ECHA within 120 days.

13.     Shortly after executing the Option Contract, Plaintiff learned that the 10-Hospitals were actually encumbered by exclusive vendor agreements for four (4) hospitals, twice as many as Defendants falsely represented.  Defendants' prior representations were false in this particular and Plaintiff would not have entered into the Option Contract but for Defendants' misrepresentations.

14.     Defendants further made material misrepresentations as regarding the cost to "buyout" the existing exclusivity contracts.  Prior to entering into the Option Contract, Defendants represented that each buyout provision would cost approximately two hundred thousand dollars ($200,000.00). However, during the due diligence period, Plaintiff learned that each buyout provision would actually cost three times more, at approximately six hundred thousand dollars ($600,000.00).

---

[1] *See* Letter of Intent at 3, attached hereto as Exhibit A.

### C. The Materiality of the Information

15.     All of Defendants' misrepresentations were material because they substantially changed the perceived value of Plaintiff's business prospects with the 10-Hospitals. Defendants were actually aware of Plaintiff's investment objective.

16.     Ariston Lab is a laboratory that offers a wide range of laboratory services to health care entities nationwide. Plaintiff chose to purchase Defendants' ownership interests to expand Ariston Lab's laboratory services and ancillary businesses to the 10-Hospitals. The Option Contract expressly recognized this end goal:

> 8 of the 10 facilities listed in Exhibit A, must be under an Ancillary Services Agreement with [Plaintiff] within 30 days of conversion to 80% ownership of the membership interests in the [10-Hospitals]. If the Ancillary Services Agreement with 8 of the 10 hospitals has not been executed within the allotted time period, the [7.5 Million Dollars] Note is callable by the [Plaintiff]."[2]

17.     The Option Contract demonstrates the false understanding Defendants fostered because it expressly acknowledges the end result that Ariston Lab would provide lab services for some of the 10-Hospitals.  It further demonstrates the false understanding Defendants caused with regards to the number of hospitals which were not encumbered by exclusivity agreements: "8 of the 10 facilities."

## CAUSES OF ACTION

**COUNT I: Fraudulent Inducement**
AGAINST: All Defendants

18.     Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

---

[2] *Id.* at 7-8.

19. Defendants made untrue statements of material fact or omitted to state material facts to induce Plaintiff into entering the Option Contract. As set forth above, Defendants intentionally and/or recklessly made material misrepresentations or omitted material facts necessary to make the statements made not misleading in order to induce Plaintiff into entering into the Option Contract.

20. Defendants' misrepresentations include knowingly: (i) making false statements that only two (2) of the ten (10) hospitals were under exclusive contracts with other laboratory services vendors, and (ii) making false statements with respect to the price of the buyout provisions for the existing lab services agreements.

21. As Defendants intended, Plaintiff reasonably relied upon Defendants' representations in: (i) entering into the Option Contract; and (ii) paying one hundred thousand dollars ($100,000.00) as consideration. As a consequence, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT II: Fraud in Violation of Section 10(b) of the Securities and Exchange Act of 193 and Rule 10b-5 Promulgated Thereunder**
AGAINST: All Defendants

22. Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

23. As set forth above, Defendants intentionally and/or recklessly: (i) employed a device, scheme and artifice to defraud Plaintiff with respect to the sale of the option; (ii) made untrue statements of material fact or omitted material facts necessary in order to make the statements made not misleading; and/or (iii) engaged in acts, practices or courses of business which operated as a fraud and deceit upon Plaintiff in connection with the sale of the option in violation

of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

24. Defendants also engaged in a series of fraudulent and deceitful acts or practices, including knowingly: (i) making false statements that only two (2) of the ten(10) hospitals were under exclusive contracts with other lab services vendors, and (ii) making false statements with respect to the price of the buyout provisions of the then existing lab services agreements.

25. As Defendants intended, Plaintiff reasonably relied upon Defendants' representations in: (i) entering into the Option Contract; and (ii) paying one hundred thousand dollars ($100,000.00) as consideration. As a consequence of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT III: Sale by Deceptive Means in Violation of the Uniform Securities Act**
AGAINST: All Defendants

26. Plaintiff incorporates each and every paragraph in this Complaint as if fully set forth herein.

27. Defendants' misconduct complained of herein, also constitute violations of Section 33 of the Texas Securities Act.[3] Defendants sold the Option Contract to Plaintiff by means of untrue statements of material fact and/or an omission of material fact necessary in order to make the statements not misleading.

28. Plaintiff is entitled to recover the consideration paid for the Option Contract, interest, and litigation costs under the Texas Securities Act. Plaintiff is further not required to prove scienter or reliance.[4]

---

[3] The Same anti-fraud provisions of the Uniform Securities Act were in effect for each of the two relevant states: Texas and West Virginia.
[4] *See Wood v. Combustion Eng'g, Inc.*, 643 F.2d 339, 345 (5th Cir. 1981); *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 648-49 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.); *Anheuser-Busch Cos. v. Summit Coffee Co.*, 858 S.W.2d 928, 936 (Tex. App.—Dallas 1993, writ denied), vacated on other grounds, 514 U.S. 1001

**COUNT IV: Negligent Misrepresentation**
AGAINST: All Defendants

29. The allegations contained in all of the paragraphs of this Complaint are hereby re-averred and re-alleged, for all purposes, and incorporated herein with the same force and effect as if set forth verbatim herein.

30. In making the representations and omissions alleged in the above paragraphs, which are incorporated herein, Defendants acted negligently and with gross negligence and without any reasonable grounds for believing their misrepresentations were justifiable, reliable or true when made.

31. Defendants had a pecuniary interest in the transaction because they received valuable consideration as part of the Option Contract.

32. Plaintiff was without knowledge of the falsity of these statements, and believed them to be true. In actual and justifiable reliance on the omissions and misrepresentations of material facts, Plaintiff purchased the Option Contract for one hundred thousand dollars ($100,000.00). Had Plaintiff known the truth, it would not have done so. As a consequence of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial.

## PRAYER

WHEREFORE, Plaintiff demands a jury trial on all issues, respectfully prays that Defendants be summoned to appear and answer herein, and respectfully request that the Court enter a judgment or order:

    1. Directing Defendants to pay to Plaintiff compensatory damages in an amount to be determined at trial;

---

(1995); *Rio Grande Oil Co. v. State*, 539 S.W.2d 917, 921 (Tex. Civ. App. Houston (1st Dist.) 1976, writ ref'd n.r.e.).

2. Directing Defendants to pay to Plaintiff consequential damages in an amount to be determined at trial;

3. Directing Defendants to pay to Plaintiff punitive damages in an amount to be determined at trial;

4. Granting Plaintiff the option of rescinding the Option Contract;

5. Directing Defendants to pay to Plaintiff its costs, interest and attorneys' fees; and

6. Granting Plaintiff such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**McCathern, PLLC**

*/s/ Arnold Shokouhi*
Arnold Shokouhi
State Bar No. 24056315
arnolds@mccathernlaw.com
Justin N. Bryan
State Bar No. 24072006
jbryan@mccathernlaw.com
Sounia Senemar
State Bar No. 24103925
ssenemar@mccathernlaw.com

3710 Rawlins, Suite 1600
Dallas, TX 75219
Telephone:  (214) 741-2662
Facsimile: (214) 741-4717

**ATTORNEYS FOR PLAINTIFF**