IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MUNEAR ASHTON KOUZBARI, §
§
         Plaintiff, §
§ Civil Action No. 3:18-CV-0126-D
VS. §
§
HEALTH ACQUISITION COMPANY, §
LLC, et al., §
§
         Defendants. §

MEMORANDUM OPINION
AND ORDER

In this case arising from a securities transaction, plaintiff Munear Ashton Kouzbari ("Kouzbari") moves for leave to amend his complaint against defendants Health Acquisition Company, LLC and Rural Community Hospitals of America, LLC after the deadline for moving for leave to amend. For the reasons that follow, the court grants the motion.

I

In January 2017 Kouzbari and defendants entered into an option contract granting Kouzbari the right to purchase defendants for a set price. In exchange for this right, Kouzbari paid defendants the sum of $100,000. Kouzbari executed the contract on behalf of Ariston Lab Associates, LLC ("Ariston Lab"), which provides laboratory services to entities in the health care industry.[1] According to Kouzbari's complaint, he was interested in purchasing defendants because of their 80% ownership interest in HMC/CAH

---

[1]Kouzbari is pursuing his claims individually and as assignee of Ariston Lab's rights and claims against defendants.

Consolidates, Inc. ("HMC"), which operates ten critical access hospitals located throughout the United States. By acquiring defendants, Kouzbari sought to expand Ariston Lab's services to these ten hospitals.

Before the parties signed the option contract, defendants allegedly represented to Kouzbari that only two of the ten hospitals were subject to exclusive agreements with other companies for the provision of laboratory services, and that it would cost Kouzbari $200,000 to buy out each of those two contracts. Kouzbari alleges that, after he signed the option contract, he discovered that four of the hospitals—not just two—were encumbered by exclusive agreements, and that each agreement would actually cost $600,000 to buy out. He contends that defendants' misrepresentations were material because his primary objective in acquiring defendants was to provide laboratory services to the ten HMC hospitals. The complaint asserts claims based on common-law fraudulent inducement and negligent misrepresentation, § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, and the Texas Securities Act.

In May 2018 the court issued a scheduling order that set August 3, 2018 as the deadline for moving for leave to amend the pleadings. Kouzbari filed the present motion for leave to amend on October 18, 2018—more than two months after the deadline. He seeks to add a rescission claim "based on Defendants' knowledge of Plaintiff's unilateral mistake." P. Mot. Am. 1. According to Kouzbari, defendants produced an email attachment during informal discovery that alerted him to the viability of a rescission claim. He maintains that the attachment shows that defendants knew that four, rather than two, of the HMC hospitals

were encumbered by exclusive contracts—even before the parties executed the option contract. Defendants oppose the motion, contending that Kouzbari has not shown good cause for the relief he seeks.

II

A

When, as here, a motion for leave to amend the pleadings is filed after the deadline for seeking leave to amend has expired, the court must first determine whether to modify the scheduling order under the good cause standard of Fed. R. Civ. P. 16(b)(4). *See S & W Enters., L.L.C. v. S. Tr. Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003); *Valcho v. Dall. Cty. Hosp. Dist.*, 658 F.Supp.2d 802, 814 (N.D. Tex. 2009) (Fitzwater, C.J.). To meet the good cause standard, the moving party must show that, despite its diligence, it could not reasonably have met the scheduling order deadline. *See S & W Enters.*, 315 F.3d at 535. Only if the movant first satisfies the requirements of Rule 16(b)(4) must the court next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Valcho*, 658 F.Supp.2d at 814.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted). "The 'good cause'

standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.). Mere inadvertence on the part of the movant is insufficient to constitute "good cause." Instead, the movant must show that, despite its diligence, it could not have reasonably met the scheduling deadline. *See Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.).

"When a party . . . does not address the good cause standard under Rule 16(b)(4), this court typically denies the motion for that reason alone." *Miles v. Illini State Trucking Co.*, 2017 WL 8677336, at *1 (N.D. Tex. May 4, 2017) (Fitzwater, J.) (alteration in original) (quoting *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 2671316, at *3 (N.D. Tex. June 30, 2010) (Fitzwater, C.J.)). But where, as here, the grounds for good cause are clear enough from the motion to amend, the court will conduct a Rule 16(b)(4) analysis nonetheless. *See id.*

B

Relying on the liberal Rule 15(a)(2) standard, Kouzbari maintains that amending the complaint would not cause any unfair prejudice, add any parties, or add any questions of fact. He posits that it would be "unjust for the scheduling order to bar a rightful claim" where the claim is still within the statute of limitations. P. Mot. Am. 5. Defendants, relying on the Rule 16(b)(4) standard, contend that Kouzbari cannot show good cause because he received the email in question before the option contract was signed, and received it again with defendants' initial disclosures 70 days before the amendment deadline.

C

1

The court first examines Kouzbari's explanation for why he failed to file his motion for leave to amend before the August 3, 2018 deadline. Kouzbari maintains that he discovered the potential rescission claim when defendants produced the relevant email attachment during informal discovery. He does not state the exact date on which the email attachment was produced, but, based on the timeline contained in his motion, it must have been sometime between June 13, 2018 and August 17, 2018. Kouzbari does not mention, however, that he actually possessed the relevant document before informal discovery began. Defendants' exhibits show that Kouzbari received the email and attachment from defendants in January 2017—one year before he filed this lawsuit. And defendants produced the email and attachment as part of their initial disclosures in May 2018. It is therefore conceivable that Kouzbari could have discovered his rescission claim before the deadline for moving for leave to amend the pleadings.

But in deciding an untimely motion for leave to amend, the court "remembers at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order." *E.E.O.C. v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012). When the court has denied a motion for leave to amend due to the movant's lack of diligence, it has been because the movant possessed all necessary facts before the deadline *and* "otherwise [made] no showing of diligence that would excuse ignorance of facts" in his possession. *Lopez v. Reliable*

*Clean-Up & Support Servs., LLC*, 2018 WL 3609271, at *4 (N.D. Tex. July 27, 2018) (Fitzwater, J.).

But when a movant shows that he has diligently pursued his case in all other respects despite missing the deadline, the court has tended to grant a motion for leave to amend. For example, in *Maynard v. PayPal, Inc.*, 2018 WL 5776268 (N.D. Tex. Nov. 2, 2018) (Fitzwater, J.), the plaintiff's explanation for why he failed to meet the deadline for moving for leave to amend the pleadings was mostly unpersuasive. *See id.* at *3. When the court took into account the ways in which the plaintiff "at least exercised *some* reasonable diligence in pursuing [his] case," however, the court concluded that the first Rule 16(b)(4) factor did not weigh against granting the motion to amend. *See id.* at *4 (emphasis added). Similarly, in *Howard v. Medicredit, Inc.*, 2018 WL 3752366 (N.D. Tex. Aug. 8, 2018) (Fitzwater, J.), the plaintiff untimely moved for leave to amend her complaint based on records that the defendant had produced 31 days before the deadline for seeking leave to amend. *See id.* at *2. The plaintiff explained that she delayed reviewing the defendant's production so that she could attempt to subpoena additional records from her phone company, and then—after discovering the possible additional claims—attempted to meet and confer with the defendant instead of immediately moving to amend. *See id.* at *2-3. Because the plaintiff's "actions during the delay . . . demonstrate[d] her diligence despite missing the scheduling order deadline," the court held that the first factor weighed in favor of granting the plaintiff's motion. *See id.* at *3.

In the present case, Kouzbari's motion indicates that he diligently pursued his case

despite missing the deadline to move for leave to amend the pleadings. Between the time defendants made their initial disclosures and the time Kouzbari moved for leave to amend, Kouzbari actively pursued settlement negotiations with defendants. These negotiations are evidenced by two Rule 11 agreements, executed in June and September of 2018, that postponed the deadline for defendants to respond to Kouzbari's first set of written discovery requests. And when Kouzbari discovered his rescission claim, he sent a formal demand for rescission to defendants instead of immediately moving for leave to amend. *Cf. Howard*, 2018 WL 3752366, at *3 (concluding that it was reasonable for plaintiff to request meeting with defendant regarding potential new claims instead of moving right away for leave to amend). It was reasonable for Kouzbari to focus on settlement negotiations during this period instead of actively searching defendants' document productions for new claims.

The fact that Kouzbari initially received the relevant email and attachment in January 2017 does not change the court's analysis. In *Howard* the plaintiff's proposed new claims were based on 15 telephone calls between the plaintiff and the defendant. *See Howard*, 2018 WL 3752366, at *3. The fact that the plaintiff was a party to those conversations, and therefore knew about their contents before the defendant produced the recordings to her, did not indicate a lack of diligence on her part because it was "unsurprising and reasonable that [the plaintiff] would not recall the verbatim contents of each [call]." *Id.* In the present case, it is likewise unsurprising and reasonable that Kouzbari would have overlooked an attachment to a single email that he received one year before filing suit. The first factor therefore weighs in favor of granting Kouzbari's motion to amend.

2

The second factor is the importance of the amendment. This court has previously deemed other proposed amendments to be important where they "potentially provide[d] additional grounds for [a party] to recover," *Mid-Continent Casualty Co. v. Eland Energy, Inc.*, 2009 WL 3074618, at *37 (N.D. Tex. Mar. 30, 2009) (Fitzwater, C.J.), or "directly affect[ed] [a party's] prospects of ultimate recovery," *The Richards Group, Inc. v. Brock*, 2008 WL 1722250, at *2 (N.D. Tex. Apr. 14, 2008) (Fitzwater, C.J.). Here, Kouzbari's proposed rescission claim would provide an additional, alternative ground on which he might recover. The requested amendment is therefore important.

3

The court considers the third and fourth factors—the potential prejudice to defendants and the availability of a continuance—together. *See, e.g., Maynard*, 2018 WL 5776268, at *5. Kouzbari asserts that amending the complaint would not cause any unfair prejudice because the case is still in its infancy: defendants have not yet served any written discovery requests, and neither side has taken any depositions. He also maintains that the factual issues would remain unchanged, because the facts underlying a rescission claim based on unilateral mistake—what did the parties know, and when did they know it?—are also relevant to Kouzbari's extant fraudulent misrepresentation claim. Defendants respond that they *would* be prejudiced by an amendment because they have developed their defenses based on Kouzbari's original four claims, and because they would have to expend additional resources to obtain discovery on the new claim.

The court is not persuaded that allowing Kouzbari's proposed amendment would impose a significant discovery burden on defendants. There appears to be substantial overlap between the facts at issue in Kouzbari's rescission claim and those at issue in his fraud claim. *Compare Davis v. Grammer*, 750 S.W.2d 766, 768 (Tex. 1988) ("Unilateral mistake by one party, and knowledge of that mistake by the other party, is equivalent to mutual mistake."), *with Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47-48 (Tex. 1998) ("A fraud cause of action requires 'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" (quoting *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994))). This similarity weighs against a finding of unfair prejudice. *See Clapper v. Am. Realty Inv'rs, Inc.*, 2017 WL 978098, at *4 (N.D. Tex. Mar. 14, 2017) (Fitzwater, J.) ("Plaintiffs' proposed new alter ego claim . . . appears to share many factual predicates with their existing claims[.]").

As to the argument that defendants would have to adjust their defense strategy to account for Kouzbari's new claim, this alone does not constitute prejudice for the purposes of Rule 16(b)(4). If granted, a plaintiff's motion for leave to amend will always require the defendant to adjust its strategy to some extent, unless the proposed amendment is essentially technical in nature and does not add or drop previously-pleaded claims.

At this early stage of the proceedings, any prejudice to defendants can be cured by a continuance—if a continuance is even necessary, given that the deadline for discovery is still

three months away. *See Howard*, 2018 WL 3752366, at *4 ("[E]ven if the parties ultimately need additional discovery, over two months remain until the current discovery deadline."). The third and fourth factors therefore weigh in favor of granting Kouzbari's motion.

4

The Rule 16(b)(4) analysis is a holistic one. The court "does not mechanically count the number of factors that favor each side. And it remembers at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order." *Serv. Temps*, 2009 WL 3294863, at *3. The court concludes, after weighing all of the relevant factors, that Kouzbari has shown good cause to amend the scheduling order to allow him to file an amended complaint.

III

Having found good cause to amend the scheduling order, the court now turns to the question whether leave to amend should be granted under Rule 15(a).

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Garcia v. Zale Corp.*, 2006 WL 298156, at *1 (N.D. Tex. Feb. 1, 2006) (Fitzwater, J.) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). Granting leave to amend, however, "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981)). In deciding whether to grant leave to amend, the court may consider factors such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Id.* (citing cases).

Having considered the parties' positions, the court is not persuaded that it should vary in this case from Rule 15(a)(2)'s admonition that leave to amend should freely be given when justice so requires. Defendants do not argue that there was any bad faith or dilatory motive on the part of Kouzbari, that Kouzbari repeatedly failed to cure deficiencies by amendments previously allowed, that an amendment would unduly delay the case, or that amendment would be futile. And the court concludes, based on the reasons stated above, that permitting Kouzbari to amend would not cause any unfair prejudice to defendants. Accordingly, the court grants Kouzbari's motion for leave to amend under the standard of Rule 15(a)(2).

\* \* \*

For the reasons stated, the court grants Kouzbari's motion for leave to amend the complaint. The clerk of court is directed to file the amended complaint today.

**SO ORDERED**.

December 11, 2018.

                                                  SIDNEY A. FITZWATER
                                                  SENIOR JUDGE